1  Roger A. Greenbaum (SB No. 159450)
   Roger Greenbaum Equity Law & Mediation
2  290 South Main Street, # 542
   Sebastopol, CA 95473-0542
3  Telephone: (415) 779-2506
   Email: rg@rogergreenbaum.com
4  Fax:      (707) 823-1233

5
   Attorneys for Plaintiffs
6  Ryan Anenson
   Sarah Anenson
7  Christian Anenson

8

9              UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF CALIFORNIA, Sacramento Division

| 10  RYAN ANENSON; | CASE NO.: 2:20-cv-00901-MCE-DB |

RYAN ANENSON;
SARAH ANENSON; and
CHRISTIAN ANENSON,

        Plaintiffs,

v.

VACAVILLE UNIFIED SCHOOL
DISTRICT; DIXON UNIFIED SCHOOL
DISTRICT; SOLANO COUNTY
SPECIAL EDUCATION LOCAL PLAN
AREA; SOLANO COUNTY OFFICE
OF EDUCATION; STEPHANIE
MARQUEZ, in her individual capacity;
BRIAN DOLAN, in his individual
capacity; and DOES 1-25, inclusive, sued
individually and in their respective
official capacities,

        Defendants.

CASE NO.: 2:20-cv-00901-MCE-DB

**AMENDED COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF FOR ABRIDGMENT OF RIGHTS PROTECTED UNDER FEDERAL REHABILITATION ACT SECTION 504, FEDERAL AMERICANS WITH DISABILITIES ACT OF 1990, AND UNDER PROVISIONS OF CALIFORNIA LAW;**

**DEMAND FOR JURY TRIAL**
**[As To All Counts]**

**PRELIMINARY STATEMENT**

Plaintiffs herein, a student and his parents, bring this statutory action under (i) the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794 (sometimes herein called "Section 504" or "the Rehabilitation Act"), (ii) the Americans With Disabilities Act of 1990, § 201 et seq., 42 U.S.C. §§ 12131 et seq., including, but not limited to, 42 U.S.C. §§ 12132 and 12203 (sometimes referenced herein as "the ADA"), and (iii) under California law, to remedy the abridgement by public agencies, and by certain individuals in their individual capacity, of the plaintiffs' rights to be protected from unlawful discrimination on the basis of student's disability, and to be protected from unlawful retaliation, interference, coercion, threat, or intimidation, with respect to the advocacy by these plaintiffs of their protected rights.

## I. PARTIES

1. The plaintiffs in this action (collectively herein, "Plaintiffs") are: Ryan Anenson, a student (herein, "Plaintiff Student"); Student's mother, Sarah Anenson; and Student's father, Christian Anenson. Plaintiffs are residents of Vacaville, California 95688. Plaintiffs Sarah Anenson and Christian Anenson are sometimes collectively referred to herein as "Plaintiff Parents".

2. One of the defendants in this action is the Vacaville Unified School District, a public entity (herein, "VUSD" or "Vacaville District"), with offices at 401 Nut Tree Road, Vacaville, Solano County, California 95687, and having facilities, operations and employees located in Solano County, California. Upon information and belief, Plaintiffs allege that Defendant Vacaville District receives substantial federal financial assistance.

3. One of the defendants in this action is the Dixon Unified School District, a public entity (herein, "Dixon USD" or "Dixon District"), with offices at 180 South First Street, Dixon, Solano County, California 95620, and having facilities, operations and employees located in Solano

County, California.   Upon information and belief, Plaintiffs allege that Defendant Dixon District receives substantial federal financial assistance.

4.  One of the defendants in this action is the Solano County Special Education Local Plan Area, a public entity (herein, "Solano SELPA"), with offices at 5100 Business Center Drive, Fairfield, California 94534.

5.  One of the defendants in this action is the Solano County Office of Education, a public entity (herein, "Solano COE"), with offices at 5100 Business Center Drive, Fairfield, California 94534.

6.  One of the defendants in this action is Stephanie Marquez, in her individual capacity, with an address at Dixon High School, 555 College Way, Dixon, California 95620 (herein, "Defendant Marquez").

7.  One of the defendants in this action is Brian Dolan, in his individual capacity, with an address at Dixon Unified School District, 455 East "A" Street, Dixon, California 95620 (herein, "Defendant Dolan").  (Vacaville District, Dixon District, Solano SELPA, Solano COE, Defendant Marquez, and Defendant Dolan, are sometimes collectively referred to herein as the "Named Defendants".)

8.  The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 – 25, inclusive (the "Doe Defendants"), are unknown at this time to Plaintiffs, who therefore sue the Doe Defendants, in their respective official capacities and, as the case may be, individually, by such fictitious names.  When the true names and capacities of the Doe Defendants have been ascertained, Plaintiffs will amend this Amended Complaint accordingly.  Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, knowingly or in some other actionable manner, for the events and happenings hereinafter referred to, and caused the Plaintiffs, and each of them, to suffer deprivation of valuable rights, deprivation of valuable consideration and other damages, as shall be hereinafter alleged.

9.  At all times herein mentioned, each of the Named Defendants and the Doe Defendants was the agent, servant, employee, delegate, designee, authorized representative, and/or co-venturer

of her, his or its co-Defendants, and of each of them, and at all said times, each Defendant was acting within the course and scope of said agency, service, employment, authority, delegation, designation and/or joint venture.  (Defendant Vacaville District, Defendant Dixon District, Defendant Solano SELPA, Defendant Solano COE, and Defendants DOES 1-25, inclusive, individually and in their respective official capacities, and each of them, are sometimes collectively referred to herein as the "Public Agency Defendants".)

## II.  JURISDICTION

10.  Pursuant to 28 U.S.C.  § 1331, the federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

11.  Federal question jurisdiction for this action is provided pursuant to Section 504, that is, pursuant to the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794; and pursuant to the ADA, that is, pursuant to Title II of the Americans With Disabilities Act of 1990, § 201 et seq., 42 U.S.C. §§ 12131 et seq.

12.  It has long been established that Section 504 contains an implied right of action for damages to enforce its safeguards.  *Mark H. v. Lemahieu*, 513 F.3d 922, 935-939 (9th Cir. 2008); *Greater L.A. Counsel on Deafness v. Zolin, Inc.,* 812 F.2d 1103, 1107 (9th Cir. 1987).

13.  Title II of the ADA was modeled after Section 504 of the Rehabilitation Act.  *A.G. v. Paradise Valley Unif. Sch. Dist.,* 815 F.3d 1195, 1203 (9th Cir. 2016); *Duvall v. County of Kitsap,* 260 F.3d 1124, 1135 (9th Cir. 2001).   For purposes of this action, "the elements of a valid ADA Title II claim do not differ in any material sense from a valid Section 504 claim, and the two may be addressed together." *A.G. v. Paradise Valley Unif. Sch. Dist.,* 815 F.3d 1195, 1203-1204 (9th Cir. 2016).

14.  In addition, under the provisions of Section 203 of the ADA, 42 U.S.C.A. § 12133, the remedies, procedures and rights arising pursuant to Section 504 of the Rehabilitation Act "shall be the remedies, procedures and rights this subchapter provides to any person alleging discrimination in violation of" the ADA's Title II safeguards.

15. The focus in Section 504 is whether disabled persons were denied meaningful access to state-provided services. Thus, although Section 504 does not require substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals, it, like the ADA, does require reasonable modifications necessary to correct for instances in which qualified disabled persons are prevented from enjoying meaningful access to a benefit because of their disability.

16. Federal question jurisdiction for this action is also provided pursuant to a private right of action under the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794, as implemented pursuant to 42 U.S.C. §§ 1983 and 1985.

17. Federal question jurisdiction for this action is also provided pursuant to a private right of action under Title II of the Americans With Disabilities Act of 1990, § 201 et seq., 42 U.S.C. §§ 12131 et seq., including, but not limited to, 42 U.S.C. §§ 12132 and 12203, as implemented pursuant to 42 U.S.C. §§ 1983 and 1985.

18. Plaintiffs bring this action seeking relief arising from breach by each of the Named Defendants and the Doe Defendants of their respective obligations under Section 504 and the ADA to ensure that Plaintiff Student could enjoy access to the benefits of public school education free from unlawful discrimination on the basis of disability.

19. In addition, Plaintiffs bring this action seeking relief arising from breach by each of the Named Defendants and the Doe Defendants of their respective obligations under Section 504 and the ADA to ensure that none of the Plaintiffs would be subjected to unlawful retaliation, interference, coercion, threat, or intimidation directed at Plaintiffs' advocacy of protected rights.

20. Jurisdiction in a district court of the United States exists for this action without regard to the amount in controversy.

21. Pursuant to 28 U.S.C. § 1367, the federal district courts having original jurisdiction of an action, also possess supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Pursuant to 28 U.S.C. § 1367, such

supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

22. The failure or refusal by each of the Defendants to honor its respective obligations under the provisions of the ADA gives rise to claims in favor of Plaintiffs under the laws of the State of California (Government Code §§ 51-52 and 54-55, in Counts Six and Seven of this Amended Complaint), which are so related to claims in the action within the original jurisdiction of the district courts of the United States, that they form part of the same case or controversy under Article III of the United States Constitution.

23. More particularly, pursuant to the provisions of § 51 of the Civil Code of the State of California (the "Unruh Civil Rights Act"), a violation of the right of any individual under the ADA shall be deemed a violation of Unruh Civil Rights Act. California Civil Code § 51(f). Plaintiffs allege in this Amended Complaint numerous ADA violations by the Defendants with respect to, and causing injury to, each of the Plaintiffs, in connection with Plaintiff Student's pursuit of the benefits of a public education free from unlawful discrimination on the basis of disability. Accordingly, the Plaintiffs invoke the supplemental jurisdiction of the federal courts over such state law claims.

24. In addition, pursuant to the provisions of § 54 of the Civil Code of the State of California (the "Disabled Persons Act"), a violation of the right of any individual under the ADA shall be deemed a violation of Disabled Persons Act. California Civil Code § 54(c). Plaintiffs allege in this Amended Complaint numerous ADA violations by the Defendants with respect to, and causing injury to, each of the Plaintiffs, in connection with Plaintiff Student's pursuit of the benefits of a public education free from unlawful discrimination on the basis of disability. Accordingly, the Plaintiffs invoke the supplemental jurisdiction of the federal courts over such state law claims.

25. In addition, pursuant to California Education Code § 56205(a)(11), Defendant Solano SELPA has an obligation to ensure that it has in effect policies, procedures, and programs consistent with state laws, regulations, and policies concerning "compliance assurances, including general compliance with . . . Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), the

federal Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12101 et seq.), federal regulations pertaining thereto, and this part." The County Superintendent of Schools, elected by the voters in Solano County, serves as the chief executive officer of Defendant Solano County Office of Education (COE), and as such, also serves as a member of Defendant Solano SELPA. Defendant Vacaville District and Defendant Dixon District are among five (5) school districts which are also members of Defendant Solano SELPA. Plaintiffs allege in this Amended Complaint numerous Section 504 and ADA violations by Defendant Solano SELPA and Defendant Solano COE with respect to, and causing injury to, each of the Plaintiffs, in connection with Plaintiff Student's pursuit of the benefits of a public education free from unlawful discrimination on the basis of disability. Accordingly, the Plaintiffs invoke the supplemental jurisdiction of the federal courts over such state law claims.

### III. <u>VENUE</u>

26. Venue is proper under 28 U.S.C. § 1391(b)(2)(A) because a substantial part of the events giving rise to the claim occurred in the judicial district of the court in which the Plaintiffs are initiating this action.

### IV. <u>FACTS</u>

27. Plaintiff Student was enrolled in Vacaville District from kindergarten on, that is, from in or about 2006, until in or about November 2018.

28. Plaintiff Student was enrolled in Dixon District commencing in or about November 2018. Dixon District caused Student to be involuntarily disenrolled from Dixon District in or about January 2020.

29. At all times relevant hereto, Section 504 and Title II of the ADA, as well as relevant provisions of the Unruh Civil Rights Act and the Disabled Persons Act, have required Defendants to provide Plaintiff Student with reasonable accommodations to ensure he would not, on the basis of disability, suffer deprivation of the benefits of public school education.

30. Not later than January 1, 2017 (and conceivably years prior to that), Plaintiff Student had been diagnosed by healthcare providers with two disabling conditions: (i) generalized anxiety

disorder, and (ii) attention-deficit hyperactivity disorder (ADHD). In or about the Fall of 2017, Vacaville District recognized Plaintiff Student's eligibility for a plan of accommodations under Section 504 on the basis of Plaintiff Student's anxiety disorder and ADHD (attention-deficit hyperactivity disorder). On the basis of such acknowledged eligibility, Vacaville District and Plaintiff Student's parents (Plaintiff Sarah Anenson and Plaintiff Christian Anenson), mutually approved a written Section 504 Plan of accommodations for Plaintiff Student for the 2017-2018 academic year at Vacaville High School.

31. Vacaville District, through its responsible officials, administrators and employees, had actual notice and actual knowledge, that Plaintiff Student's anxiety disorder made him susceptible to severe emotional distress causing substantial disabling interruption in his ability to receive the benefits of public school education, in the absence of appropriate accommodations to the disability.

32. Through the information which Plaintiffs had imparted to Vacaville District, the responsible officials of Vacaville District had actual and constructive knowledge including, but not limited to, knowledge that Plaintiff Student was susceptible to urinary incontinence and predominant swift transit of the bowel (diarrhea), as manifestations of his anxiety disorder. Such sequelae of an anxiety attack had the potential to cause abrupt, severe, uncontrollable disruption of Plaintiff Student's ability to attend, and progress in, academic classes and other scheduled aspects of his high school curriculum, as well as to cause Plaintiff Student to suffer humiliation, ostracism, emotional pain, severe emotional distress, and other detriment, if the disability was not properly accommodated.

33. Said notice and knowledge on the part of Vacaville District formed a basis for accommodations included in a Section 504 Plan of accommodations for Plaintiff Student in or about the Fall of 2017. Such accommodations included provision for Plaintiff Student to be at all times while on the campus of his then school (Vacaville High School) credentialed with a "hall pass" permitting him to leave a classroom at any time in order to avail himself of the nearest bathroom's urinal or toilet facilities.

34. Vacaville District failed or refused at various times, and from time to time, throughout the 2017-2018 academic year, to implement accommodations for Plaintiff Student set forth in the agreed Section 504 Plan, causing Vacaville District to be in material breach of its obligations under applicable law.

35. Among the various ways in which Vacaville District failed or refused to implement accommodations for Plaintiff Student in the 2017-2018 academic year at Vacaville High School, Vacaville District failed on numerous occasions to honor Plaintiff Student's hall pass and, without due justification, interfered with, deterred, discouraged, dishonored and impeded his use of the hall pass accommodation.

36. In addition, as another instance of failure to implement the Section 504 Plan accommodations for Plaintiff Student in 2017-18, Vacaville District failed or refused to protect Plaintiff Student from harassment from other students.

37. Vacaville District failed or refused to protect Plaintiff Student from bullying from other students. One among many wrongful incidents occurred in the Spring of 2017 when Plaintiff Student was participating in a regular organized practice as a member of the Vacaville High School track team. Another student assaulted and beat Plaintiff Student in a park in Vacaville during track practice. The individual who committed this assault was readily and promptly identified by Vacaville District and his name was well known to Vacaville District in connection with this assault upon Plaintiff Student. With full actual notice and full actual knowledge of the facts concerning that assault, Vacaville District nonetheless placed Plaintiff Student in an English class with that same assaultive other student in the Fall Semester 2017, ignoring the protests of this from Plaintiff Parents. This, too, was a material failure to implement the Section 504 Plan accommodations for Plaintiff Student in 2017-18,

38. Vacaville District failed or refused to protect Plaintiff Student from harassment from one or more Vacaville District employees, including, but not limited to, one or more instructors. This mistreatment included, but is not limited to, subjecting Plaintiff Student to cruel and unlawful corporal punishment by compelling him to physically break apart large concrete debris outdoors in

114°F heat.  This, too, was a material failure to implement the Section 504 Plan accommodations for Plaintiff Student in 2017-18.

39.  Plaintiff Sarah Anenson and Plaintiff Christian Anenson, for themselves individually and on behalf of Plaintiff Student, provided written notification to Defendant Solano SELPA and Defendant Solano COE of the failure or refusal of Vacaville District to implement the Section 504 Plan accommodations for Plaintiff Student in 2017-18.

40.  The ongoing and repeated failure or refusal by Vacaville District to implement the Section 504 Plan accommodations for Plaintiff Student in 2017-18 had the effect of radically augmenting and escalating the level of acute anxiety experienced by Plaintiff Student associated with attending school at Vacaville High School.  This is the opposite of the effect a plan of accommodations under Section 504 should be bringing about.

41.  The ongoing and repeated failure or refusal by Vacaville District to implement the Section 504 Plan accommodations for Plaintiff Student in 2017-18 was devastating and destructive in terms of its effect on Plaintiff Student's ability to maintain the necessary concentration, attention to, and focus on the requirements of academic courses associated with attending school at Vacaville High School.

42.  The ongoing and repeated failure or refusal by Vacaville District to implement the Section 504 Plan accommodations for Plaintiff Student in 2017-18, with its resultant disruption of Plaintiff Student's mood, mental health and physical health, eventually and as a proximate and foreseeable result, caused Plaintiff Student to incur numerous school absences for health reasons and to be unable to attend classes in person on numerous occasions at Vacaville High School in March, April, May and June 2018.

43.  Defendants Vacaville District, Solano SELPA and Solano COE had both constructive and actual notice and knowledge in March, April, May and June 2018 that the ongoing and repeated failure or refusal by Vacaville District to implement the Section 504 Plan accommodations for Plaintiff Student in 2017-18, with its resultant disruption of Plaintiff Student's mood, mental health and physical health, eventually and as a proximate and foreseeable result, caused Plaintiff Student to incur numerous school absences for health reasons and to be

unable to attend classes in person on numerous occasions at Vacaville High School in March, April, May and June 2018.

44. Defendants Vacaville District, Solano SELPA and Solano COE failed to remedy said disruption of Plaintiff Student's access to the benefits of public school education in 2017-18 resulting from the failure or refusal of Defendant Vacaville District to implement the Section 504 Plan accommodations for Plaintiff Student.

45. Plaintiff Sarah Anenson and Plaintiff Christian Anenson submitted to Vacaville District numerous written letters, memoranda and notes from Plaintiff Student's health care providers to document the health-related basis for his absences from school throughout March, April, May and June 2018.

46. Vacaville District in March, April, May and June 2018 refused to recognize the absences from school as excused absences, despite its receipt of and actual knowledge of the documentation from Plaintiff Student's health care providers relating to his absences from school.

47. Due to the growing number of absences from school in March, April, and May 2018, and the associated disruption of his mood, mental health and physical health, Plaintiff Student began to fall behind on course work to a substantial extent. This was a further detrimental consequence of the failure or refusal of Defendants Vacaville District, Solano SELPA and Solano COE, to remedy Defendant Vacaville District's failure or refusal to implement the Section 504 Plan of accommodations for Plaintiff Student.

48. During this same period of time, even as Plaintiff Student attempted to continue to submit work in completion of academic assignments at Vacaville High School, nonetheless, Defendant Vacaville District and Vacaville High School personnel failed to properly process and recognize with academic credit the work Plaintiff Student was submitting.

49. The failure on the part of Defendant Vacaville District and Vacaville High School personnel to properly process and recognize with academic credit the work Plaintiff Student was submitting during this period of time, was associated with Defendant Vacaville District and Vacaville High School personnel imposing "incomplete" or "failure" grades or assessments on Plaintiff Student in the 2017-2018 academic year, including but not limited to on his official

academic transcript. Such "incomplete" or "failure" grades or assessments were without proper justification, and yet were punitive, detrimental, hurtful, and unfair to Plaintiff Student.

50. Plaintiff Sarah Anenson and Plaintiff Christian Anenson, on behalf of Plaintiff Student, in or about late April or early May 2018, submitted a written request to Defendant Vacaville District seeking to have Defendant Vacaville District accord Independent Study status to Plaintiff Student, so that he could more successfully continue with his studies at home for the balance of the 2017-2018 academic year, and in keeping with the underlying purpose of the Section 504 Plan of accommodations for Plaintiff Student.

51. In an email on or about May 10, 2018, Defendant Vacaville District gave written notification to Plaintiffs that it would not approve Independent Study status for Plaintiff Student.

52. The refusal by Defendant Vacaville District to approve Independent Study status for Plaintiff Student in May 2018 constituted a separate, additional violation of its obligations to implement the Section 504 Plan of accommodations for Plaintiff Student under applicable law.

53. The refusal by Defendant Vacaville District to approve Independent Study status for Plaintiff Student in May 2018 was a wrongful act that constituted a separate, additional violation of its obligations toward Plaintiff Student under applicable law.

54. Over the summer of 2018, Plaintiff Parents on behalf of Plaintiff Student continued to seek to persuade Defendant Vacaville District that Independent Study status would be appropriate to enable Plaintiff Student to continue with his high school education in Defendant Vacaville District.

55. Defendant Vacaville District failed or refused to grant Plaintiff Student Independent Study status for continuation of his public school studies as of the start of the 2018-19 academic year.

56. Thereafter, from and after August 2018, the efforts by Plaintiff Parents to arrive at a revised, modified or updated Section 504 Plan of accommodations for Plaintiff Student with Defendant Vacaville District, for the 2018-19 school year, were thwarted and obstructed by the refusal of Defendant Vacaville District, including, but not limited to, by Defendant Vacaville District's failure and refusal to remedy the detrimental effects of its failure to implement the

Section 504 Plan in 2017-18.  This included, but was not limited to, failure and refusal to adopt sufficient measures in Fall 2018 to support Plaintiff Student in his efforts to rectify the "incomplete" or "failure" grades inappropriately imposed on Plaintiff Student in the Spring semester of 2018.

57.  The wrongful and unlawful acts and omissions of Vacaville District, through its administrators, officials, employees and agents, in violation of the obligations of Vacaville District under Section 504, the ADA and other applicable law, during the time period relevant hereto, including but not limited to throughout the 2017-18 academic year, as recited in this Amended Complaint, caused Plaintiff Sarah Anenson to suffer harm, injury, costs, expenses, damages and loss. The harm, injury, costs, expenses, damages and loss suffered by Plaintiff Sarah Anenson resulting from the Vacaville District's violations of law came about by various means, including, but not limited to, by causing her to be required to drive many additional trips in the family motor vehicle to care for, assist, support and help Plaintiff Student, in seeking to overcome the harm, distress, injury and damage Plaintiff Student was experiencing as a result of Vacaville District's violations of its obligations to Plaintiff Student under Section 504, the ADA and other applicable law.

58.  Prior to the events forming the basis for the action set forth in this Amended Complaint, Plaintiff Sarah Anenson had suffered workplace injuries in or about 2010, from which she had, and continues to have, injuries adjudged chronic and permanent and aggregating to a combined 34% (thirty-four percent) disability under the State of California Worker's Compensation System.  Said pre-existing permanent disabling workplace injuries included damage to nerve, disc and muscle tissue in her neck, left shoulder, upper extremities, and spine. As a result of these permanent disabling workplace injuries, Plaintiff Sarah Anenson has at all times relevant hereto found it physically very painful to operate a motor vehicle due to the various acts of reaching, bending, turning, gripping and manipulating the steering wheel, and many other physical tasks ordinarily involved in serving as the driver of a motor vehicle.

59.  The unlawful acts and omissions of Vacaville District, recited in this Amended Complaint, caused Plaintiff Sarah Anenson to be required to drive numerous additional trips

between the family home and Vacaville High School to be of aid to Plaintiff Student. The distance between the Anenson family home and Vacaville High School is approximately eight (8) to nine (9) miles. Depending on the route chosen and traffic conditions, this can typically be a drive of approximately twelve (12) to eighteen (18) minutes. Many of these additional trips by Plaintiff Sarah Anenson were because Plaintiff Student needed to be picked up from, or dropped off at, school in the middle of a school day. Other additional trips arose because Plaintiff Sarah Anenson needed to drive Plaintiff Student to a healthcare appointment with his primary care doctor, therapist, or other healthcare provider. Other additional trips became necessary so that Plaintiff Sarah Anenson could either personally deliver a written communication, or could meet in person at Vacaville High School with an official of the school or of Vacaville District. The frequent and usual effect of each of such additional driving trips (in all categories referenced in this paragraph of this Amended Complaint) was to cause a flare-up of her pre-existing disabling physical injuries. Each of these flare-ups was so physically painful, and so taxing psychologically, that the foreseeable and proximate result was that the flare-ups were debilitating to Plaintiff Sarah Anenson. During this same period of time, Plaintiff Sarah Anenson has at times experienced debilitating migraine headaches with increased frequency and/or severity, compared to prior periods of time. She has also received treatment for hypertension.

60. In addition to the physical effects upon her, the additional driving which the violations of law by Vacaville District caused Plaintiff Sarah Anenson to have to engage in also caused her to suffer severe emotional harm, resulting from her continuing and escalating concern, worry, alarm, humiliation, trauma, sadness, depression, and grief over the harm Vacaville District's unlawful acts and omissions were inflicting on her son, Plaintiff Student, with attendant severe and evident consequences on Plaintiff Student's academic standing, access to extracurricular activities, mood, morale, mental health and physical health.

61. . The wrongful and unlawful acts and omissions of Vacaville District, through its administrators, officials, employees and agents, in violation of the obligations of Vacaville District under Section 504, the ADA and other applicable law, during the time period relevant hereto, including but not limited to throughout the 2017-18 academic year, as recited in this Amended

Complaint, caused Plaintiff Christian Anenson to suffer harm injury, costs, expenses, damages and loss. The harm, injury, costs, expenses, damages and loss suffered by Plaintiff Christian Anenson resulting from the Vacaville District's violations of law came about by various means, including, but not limited to, by causing him to need to stay home from work on numerous occasions, to be of moral, intellectual, emotional, material and other support to Plaintiff Student and to Plaintiff Sarah Anenson.

62.   At all times relevant hereto, Plaintiff Christian Anenson has been the sole financial support and breadwinner for his wife and son (i.e., for Plaintiff Sarah Anenson and Plaintiff Student), and has held a position of full-time employment in a Bay Area refinery facility.  Due to the need to stay at home to be of direct and indirect support to Plaintiff Student from time to time, resulting from the violation by Vacaville District of its obligations to Plaintiff Student under Section 504, the ADA and other applicable law, Plaintiff Christian Anenson has had to miss many hours of work compensable at regular hourly rates, and has also had to miss many hours of work compensable at overtime hourly rates.  During this same period of time, Plaintiff Christian Anenson has at times suffered from hypertension.

63.   In addition, due to the violation by Vacaville District of its obligations to Plaintiff Student under Section 504, the ADA and other applicable law, Plaintiff Christian Anenson has suffered severe emotional harm resulting from his continuing and escalating concern, worry, alarm, humiliation, trauma, sadness, depression, and grief over the harm Defendant Vacaville District's unlawful acts and omissions were inflicting on his son, Plaintiff Student, with attendant severe and evident consequences on Plaintiff Student's academic standing, access to extracurricular activities, mood, morale, mental health and physical health.

64. The location of Plaintiffs' residence is such that it was feasible based on such location for Plaintiff Student to qualify for enrollment as a student in Dixon District in the 2018-19 academic year.

65.  It became apparent to Plaintiff Parents that their efforts to bring about a swift, timely accord with Vacaville District that would enable Plaintiff Student to have a successful return to

1  school for 2018-19, were not likely to be met with the necessary cooperation from Vacaville

2  District.

3      66. In or about early November 2018, Plaintiff Parents enrolled Plaintiff Student in Dixon

4  District.

5      67. Even as Plaintiffs were hopeful that new academic surroundings and instructional and

6  administrative personnel for Plaintiff Student at Dixon High School could bring about a sort of

7  fresh start, in November 2018, a sad loss for the entire family was unfolding. The family

8  patriarch, Douglas Ernst (father of Plaintiff Sarah Anenson, and grandfather of Plaintiff Student),

9  had been diagnosed, less than a year before, with a very serious progressive illness. Shortly after

10 Thanksgiving 2018, Mr. Ernst died from this disease. This added to the emotional burdens on all

11 the Plaintiffs at that time and for months thereafter.

12     68. At the time of Plaintiff Parents enrolled Plaintiff Student with Defendant Dixon

13 District, officials of Defendant Dixon District assured them that it would work with them to create

14 and implement a new Section 504 Plan for Plaintiff Student which would provide him with needed

15 accommodations for his disabilities. Officials of Defendant Dixon District said that in the interim,

16 until a full process for developing a new plan was carried out, the Defendant Dixon District would

17 utilize the extant Section 504 Plan which had been adopted by Defendant Vacaville District during

18 the prior school year, 2017-18. However, despite these assurances, Defendant Dixon District did

19 not provide implementation of the former Section 504 Plan. Moreover, despite the assurances,

20 Defendant Dixon District never offered a new Section 504 Plan adequate to meet Defendant Dixon

21 District's obligations under Section 504 and the ADA to Plaintiff Student.

22     69. By early in calendar year 2019, three significant problems had become evident. First,

23 the November 2018 timing of Plaintiff Student's enrollment at Dixon High School resulted in

24 "incomplete" academic grading and assessment ratings for his Fall 2018 coursework there. This,

25 coupled with the impasse which had frozen in place at Vacaville High School in the first months

26 of the Fall 2018 semester for Plaintiff Student, further aggravated the impediments to his attaining

27 sufficient academic credits. Dixon High School administrators advised Plaintiffs that due to these

28

circumstances, Plaintiff Student was not meeting standard criteria to qualify for participation in the Dixon High School varsity track team.

70. The inability to qualify for participation in the track team came as a surprise and a blow to Plaintiff Student.   In prior school years, at Vacaville High School he had excelled at track team events and this had had a positive effect on his self-esteem and morale.   Denial of access to participate on the track team at Dixon High School caused and contributed to disruption of his mood and mental health, with associated negative impact on his ability to concentrate on his studies.

71. In addition, Dixon High School administrators in early 2019 advised Plaintiffs that these same academic grading and assessment issues prevented Plaintiff Student from qualifying, for academic credit, for participation in Future Farmers of America.  This was another activity which he had participated in actively in prior academic years at Vacaville High School, and in which he had shown great leadership and promise.  Denial of access to academic credit for this participation at Dixon High School caused and contributed to disruption of his mood and mental health, with associated negative impact on his ability to concentrate on his studies.

72. In addition, the challenges of keeping up with a full course load during the then-current 2018-19 academic year at Dixon High School, coupled with the strain of trying to overcome the "incomplete" status of coursework from Fall 2018, was for Plaintiff Student a situation which required meaningful academic support from instructional and counseling staff at Dixon High School.  Plaintiff Parents sought adjustments to the Section 504 Plan for 2018-19 to bring about needed accommodations.  These unfortunately did not come about.

73. Other matters that Dixon District failed to resolve in a manner consistent with its obligations under Section 504 and the ADA included provision of an academic-credit recovery program to enable Plaintiff Student to make up the academic-credit shortfalls in Spring 2018 and Fall 2018; course selection and scheduling issues; and access to Dixon District's facilities and programs relating to online academic course attendance and online submission of coursework. These shortcomings occurred both in the 2018-19 school year and in the 2019-20 school year.

74. Dixon District failed in the remainder of the 2018-19 academic year to bring about proper resolution of the issues regarding track team and FFA eligibility for Plaintiff Student, and regarding his need for effective academic support from instructional and counseling staff. This constituted a failure to comply with its obligations under Section 504 and the ADA.

75. During the summer of 2019, Plaintiffs sought, through Plaintiff Student's course selection for the coming 2019-20 academic year, to heighten prospects for it to be a successful one for him.

76. By the late Spring of 2019, in what nominally was Plaintiff Student's junior year of high school (11th grade), it was apparent that several major aspects of his school standing situation were in need of being addressed under the umbrella of a Section 504 Plan for this disabled student. One was course selection for what would nominally be his senior year (12th grade), for the 2019-20 school year. A meeting on or about May 19, 2019 yielded assurances to Plaintiffs from a Dixon High School assistant principal and one of its academic guidance counselors, that a specific set of courses selected by Plaintiff Student for the 2019-20 Fall Semester, had been approved to comprise his Fall Semester schedule. A meeting in June 2019 focused on firming up a program for academic-credit recovery. As then conceived, the academic-credit recovery program would require Plaintiff Student in the Fall Semester to carry out make-up work from prior semesters (dating back to the Vacaville High School 10th grade year) in parallel to his ongoing course work as a high school senior at Dixon High School, and integrating this into Plaintiff Student's Section 504 plan of accommodations.

77. On the first day of school in August 2019, the course schedule which Defendant Dixon District in fact distributed for Plaintiff Student did not conform to the choices he had submitted and which the guidance counselor had in June assured him would be established.

78. Beginning with the first day of school in August 2019, and continuing on numerous occasions thereafter for as long as Plaintiff Student was enrolled at Dixon High School, the principal, Defendant Stephanie Marquez, spoke to Plaintiff Student and/or to Plaintiff Sarah Anenson in tones which were angry, hostile, demeaning, insulting, hurtful, and/or humiliating, in front of other persons present at the time. On at least one occasion, Defendant Marquez engaged

in an outburst in an interior hallway within Dixon High School, shouting in a loud voice concerning Plaintiff Student and in his presence, "HIS PARENTS ARE PISSING ME OFF!"   As experienced by Plaintiff Student, the various several aspects of behavior on the part of Defendant Marquez referenced in this paragraph rendered the Dixon High School a hostile educational environment.  Adding insult to injury, Defendant Marquez in meetings with one of more of the Plaintiffs herein displayed a rigid, inflexible attitude in regard to problems or issues relating to Plaintiff Student's Dixon High School program and his Section 504 Plan of accommodations, which required a more conciliatory, reasoned, open and flexible attitude.

79.  The shouted outburst from Defendant Marquez ("HIS PARENTS ARE PISSING ME OFF!") which Plaintiff Student heard Defendant Marquez shout out loud, and the other various several aspects of behavior on the part of Defendant Marquez referenced in this Amended Complaint, including but not limited to her insistence on repeated private, closed-door one-on-one communication with Plaintiff Student despite his objection and despite her knowledge of his anxiety disorder, were acts that carried a significant risk of humiliation, damage to reputation, and a concomitant harm to future educational advancement prospects of Plaintiff Student.

80.  The shouted outburst outburst from Defendant Marquez ("HIS PARENTS ARE PISSING ME OFF!") which Plaintiff Student heard Defendant Marquez shout out loud, and the other various several aspects of behavior on the part of Defendant Marquez referenced in this Amended Complaint, including but not limited to her insistence on repeated private, closed-door one-on-one communication with Plaintiff Student despite his objection and despite her knowledge of his anxiety disorder,  were acts that in fact inflicted significant humiliation, damage to reputation, trauma, and concomitant harm to future educational advancement prospects of Plaintiff Student, thereby causing severe damage to his education, morale, physical health, emotional health, happiness, prospects for post-secondary education and prospects for career success and fulfillment.

81.  The shouted outburst outburst from Defendant Marquez ("HIS PARENTS ARE PISSING ME OFF!") which Plaintiff Student heard Defendant Marquez shout out loud, and the other various several aspects of behavior on the part of Defendant Marquez referenced in this

Amended Complaint, including but not limited to her insistence on repeated private, closed-door one-on-one communication with Plaintiff Student despite his objection and despite her knowledge of his anxiety disorder, were knowing, deliberate acts of retaliation, interference, coercion, threat and intimidation by Defendant Marquez that disturbed the peace of Plaintiff Student, rendering Dixon High School for him a hostile educational environment.

82. The shouted outburst outburst from Defendant Marquez ("HIS PARENTS ARE PISSING ME OFF!") which Plaintiff Student heard Defendant Marquez shout out loud, and the other various several aspects of behavior on the part of Defendant Marquez referenced in this Amended Complaint, including but not limited to her insistence on repeated private, closed-door one-on-one communication with Plaintiff Student despite his objection and despite her knowledge of his anxiety disorder, were knowing, deliberate acts of retaliation, interference, coercion, threat and intimidation by Defendant Marquez against Plaintiffs. These knowing, deliberate acts destroyed the mental or emotional calm of Plaintiff Student, rendering Dixon High School for him a hostile educational environment.

83. The shouted outburst outburst from Defendant Marquez ("HIS PARENTS ARE PISSING ME OFF!") which Plaintiff Student heard Defendant Marquez shout out loud, and the other various several aspects of behavior on the part of Defendant Marquez referenced in this Amended Complaint, including but not limited to her insistence on repeated private, closed-door one-on-one communication with Plaintiff Student despite his objection and despite her knowledge of his anxiety disorder, were knowing, deliberate acts of retaliation, interference, coercion, threat and intimidation by Defendant Marquez against the Plaintiffs herein. Those knowing, deliberate acts had a nexus to the exercise or enjoyment by Plaintiff Student of his ADA rights, including, but not limited to, by reason of the accompanying refusal by Defendant Marquez to agree to, implement or carry out a proper plan of accommodations regarding Plaintiff Student's disabilities.

84. The shouted outburst outburst from Defendant Marquez ("HIS PARENTS ARE PISSING ME OFF!") which Plaintiff Student heard Defendant Marquez shout out loud, and the other various several aspects of behavior on the part of Defendant Marquez referenced in this Amended Complaint, including but not limited to her insistence on repeated private, closed-door

one-on-one communication with Plaintiff Student despite his objection and despite her knowledge of his anxiety disorder, were knowing, deliberate acts of retaliation, interference, coercion, threat and intimidation by Defendant Marquez against the Plaintiffs herein.  Those knowing, deliberate acts caused Plaintiff Student to suffer distinct and palpable injury as a result, including but not limited to severe emotional pain, severe emotional distress, demoralization, depression, despair, trauma, isolation, denial of the opportunity to participate in personally rewarding extracurricular activities offered by Defendant District to other students, and denial of opportunity to advance in his high school education.

85.  On the basis of the in-person communications by Defendant Marquez described in the preceding paragraphs hereof, Plaintiffs beginning in August 2019, and from time to time more than once thereafter, notified Defendant Dixon District, in writing, that Defendant Marquez' presence in person would be unwelcome, unhelpful,  disruptive, harmful and detrimental, in regard to meetings such as those of a 504 Plan Team for Plaintiff Student, as well as other more informal problem-solving meetings relating to his studies and attendance at Dixon High School.  In addition, Plaintiff Parents notified Defendant Dixon District that they objected to allowing Defendant Marquez to meet one-one-one, alone, with their son Plaintiff Student, because Defendant Marquez's antagonistic and berating behavior toward Plaintiff Student had already caused him to suffer panic attacks, associated with his anxiety disorder.

86.  Notwithstanding many express and renewed written notifications from Plaintiffs that Defendant Marquez's presence in person would be unwelcome, unhelpful,  disruptive, harmful and detrimental to Plaintiff Student, Defendants Dolan and Dixon District continued to condone and insist upon the imposition of Defendant Marquez's presence in person in many if not all significant meetings for purposes of addressing issues relating to the Section 504 Plan for Plaintiff Student.

87.  This insistence by Defendants Marquez, Dolan and Dixon District on imposing upon Plaintiffs the presence in person of Defendant Marquez despite repeated notification that such presence in person by Defendant Marquez would be unwelcome, unhelpful,  disruptive, harmful and detrimental, in fact caused further severe costly harm and injury to Plaintiff Student.

88.   This insistence by Defendants Marquez, Dolan and Dixon District on imposing upon Plaintiffs the presence in person of Defendant Marquez despite repeated notification that such presence in person by Defendant Marquez would be unwelcome, unhelpful, disruptive, harmful and detrimental, in fact was a proximate and substantial cause in the failure of efforts by Plaintiffs to obtain effective accommodations from Defendant Dixon for Plaintiff Student in a Section 504 Plan for the 2019-20 school year.

89.   This insistence by Defendants Marquez, Dolan and Dixon District on imposing upon Plaintiffs the presence in person of Defendant Marquez despite repeated notification that such presence in person by Defendant Marquez would be unwelcome, unhelpful, disruptive, harmful and detrimental, in fact was a form of retaliation, interference, coercion, threat and intimidation by Defendant Marquez, Dolan and Defendant District against Plaintiffs for the Plaintiffs' advocacy of protected rights of Plaintiff Student.

90.   Plaintiffs gave written notice more than once, to Defendants Solano SELPA and Solano COE, of Plaintiffs' objections to the presence in person of Defendant Marquez at meetings related to the Section 504 Plan for Plaintiff Student.   Plaintiffs urged Defendants Solano SELPA and Solano COE to intervene to protect Plaintiff Student from the unwelcome disruption and other harms associated with the in-person presence of Defendant Marquez at meetings.   In spite of this, Defendants Solano SELPA and Solano COE continued to condone and assist Defendant Marquez in persisting in imposing her presence in person as a condition of significant meetings with Plaintiffs and/or with Plaintiff Student alone.   This conduct by Defendants Dixon District, Solano SELPA and Solano COE, in condoning and encouraging the imposition of Defendant Marquez's confrontational, antagonistic behavior toward Plaintiffs, with knowledge of the anxiety disorder of Plaintiff was a form of retaliation against Plaintiffs for their advocacy of protected rights of Plaintiff Student.

91.   Defendant Marquez's hostile, unwarranted verbal aggression against Plaintiff Student in August 2019 and thereafter caused him to suffer panic attacks.   This directly, proximately and foreseeably caused him to be absent from school in the day or days immediately following such attacks, each time one of these incidents occurred.   Such behavior by Defendant Marquez was

without justification, and can properly be characterized as cruel, deliberate, knowing and intentional conduct, in light of the knowledge, both actual and constructive, which Defendant Marquez had and which Defendant Dixon District had regarding Plaintiff Student's anxiety disorder. As such, it constitutes an egregious violation of Section 504 and the ADA, a series of violations directly and fully attributable to Defendants Marquez, Dixon District, Solano SELPA, and Solano COE. Plaintiff Parents made known to Defendants Dixon District, Solano SELPA and Solano COE a sufficient description of the facts concerning these attacks and their detrimental effects upon Plaintiff Student, to have warranted the imposition by said defendants of severe discipline upon Defendant Marquez. Defendants Dolan, Dixon District, Solano SELPA, and Solano COE, however, each condoned, encouraged, and/or endorsed Defendant Marquez's continuing aggressive, knowing, deliberate, harmful conduct toward Plaintiff Student in this regard, and in so doing said Defendants failed to uphold their responsibilities to Plaintiff Student in this regard.

92. After the acrimonious start of the 2019-20 school year with the disruptions resulting from repeated unwelcome and emotionally harmful interventions by Defendant Marquez, a meeting was convened in September 2019. Defendant Marquez insisted on attending this meeting, over the express objections of Plaintiff Parents. At the meeting, course selection and scheduling issues were addressed, Dixon District renewed its stated commitment so support Plaintiff Student in his academic-credit recovery program, and views were exchanged about ongoing problems with Dixon District's refusal to recognize Plaintiff Student's medical documentation as a basis for excused absences.

93. Plaintiff Parents provided documentation to Defendant Dixon District from Plaintiff Student's health care providers setting forth their findings of the medical basis to excuse his absences from school on numerous occasions in the Fall of 2019, including but not limited to with reference to the panic attacks Plaintiff Student suffered after the verbal assaults by Defendant Marquez. Yet Defendant Dixon District continued to temporize, to reject the proffered documentation, and to record the absences as unexcused absences well into the middle of the Fall

2019 semester. This situation plagued Plaintiff Student's experience at Dixon High School in the Fall of 2019.

94. On October 3, 2019, Plaintiff Sarah Anenson sent a letter, transmitted via email (the "10/3/19 Letter"), to Dixon District's Pupil Services Coordinator, Adriane Laughter. Plaintiff Sarah Anenson addressed the email transmittal to Ms. Laughter, attaching the 10/3/19 Letter as a .pdf file attached, with email copies ("cc") to Defendant Dolan and Defendant Marquez. In the 10/3/19 Letter, Plaintiff Sarah Anenson recounted her own efforts since August 2019 to document (by submission of a letter from the healthcare provider) instances in which Plaintiff Student had had to miss a day of school due to a need to seek healthcare, principally due to anxiety attacks associated with the thwarted Section 504 Plan accommodations. The 10/3/19 Letter also recounted Plaintiff Sarah Anenson's frustration at having sought and failed to obtain from Dixon District a clear written statement of district-wide policy on the criteria for excused absences.

95. On October 16, 2019, Plaintiff Sarah Anenson had a phone conference with Defendant Marquez which again focused on the lack of settled, appropriate criteria for granting of excused absence treatment for healthcare-related absences.

96. On November 7, 2019, Plaintiff Sarah Anenson once again wrote a letter to Dixon District authorities relating to the excused absences issue, motivated by concern that Plaintiff Student's issues were only becoming more serious without any prospect of relief on the part of Dixon District (the "11/7/19 Letter"). She sent the 11/7/19 Letter as a .pdf file attached to an email. Both the email and the 11/7/19 Letter were addressed to Defendant Dolan and to Ms. Laughter (Dixon District's Pupil Services Coordinator), with a "cc" to Lisette Estrella-Henderson, Superintendent of the Solano County Office of Education. The opening paragraphs of the 11/7/19 Letter reads as follows:

"Dear Superintendent Dolan and Ms. Laughter:

"A pattern of sustained knowing and intentional violations of law by the Dixon Unified School District toward our son Ryan, during the current school year, has among its central features, an assortment of policies and practices which have had a devastating effect upon Ryan's health, his grade point average, his attendance, and his morale.

"The epitome of this pattern of wrongful conduct by the District has been the arbitrary, capricious and unwarranted rejection by school administrators of written communications from Ryan's health care providers. The rejected letters should provide a basis for excused absence on days Ryan has had to miss. Instead, District administrators have told us they do not accept the letters and that they do not excuse the absences."

[11/7/19 Letter, page 1.]. In the 11/7/19 Letter, Plaintiff Sarah Anenson restated Plaintiffs' willingness to work collaboratively with Dixon District to iron out a proper Section 504 Plan that would enable Plaintiff Student to work toward regularizing his academic credit accruals while progressing in the curriculum.

97. With the 11/7/19 Letter, Plaintiff Sarah Anenson also conveyed nine (9) separate letters, visit verifications, and school status reports from Plaintiff Student's healthcare providers, so that Dixon District would have abundant documentation of the many times during the months of August, September, and October 2019 Plaintiff Student had needed to access mental health care due to the panic attacks and other severe emotional distress which the acts and omissions by Defendants Marquez, Dolan, and Dixon District had caused him to endure. Two of such attached healthcare provider writings give a strong indication of the general tenor of them all. One is a letter dated August 23, 2019, from Plaintiff Student's therapist at Kaiser Permanente, addressed to Plaintiff Student. It read, in pertinent part:

"You have missed school for a number of days now because of you [*sic*] acute anxieties that were triggered by your high school principal, who apparently, changed your schedule for this semester. Your schedule had been worked out with you, your school counselors, and your parents. This abrupt change triggered a panic attack and you entered a state of acute anxiety over this change.

"It would be beneficial if your absences were excused by the school, given the school caused your panic and anxieties for this last couple of weeks, including this week, the 19th through today, the 23rd. A healthy remedy would likely be a return to the original schedule with you allowed time to make up your missing assignments."

A second letter included with the transmittal of the 11/7/19 Letter was a letter dated October 29, 2019, from Plaintiff Student's treating psychiatrist at Kaiser Permanente, addressed to Plaintiff Parents. It read, in pertinent part:

> " . . . Ryan has been having increasing anxiety and worsening of nervousness for the past several months since he began this school year in August.

> "Ryan had a significant anxiety attack and had to take afternoon off yesterday, had stomach upset and nausea and vomiting last night, could not attend school today. Ryan should be excused for the missed school day including Oct. 28th and Oct. 29th.

> "Please discuss with school principal and staff regarding any possible education accommodations to help Ryan to reduce anxiety and stress and to assise [*sic*] him to make progress and be successful in school."

98. The 10/3/19 Letter and the 11/7/19 Letter from Plaintiff Sarah Anenson, with the healthcare provider letters transmitted with the 11/7/19 Letter, gave Dixon District ample proof of the seriousness of the suffering Plaintiff Student was going through. For Defendants Dixon District, Marquez and Dolan to have turned a deaf ear to these entreaties - - as they did - - and to have continued to deny Plaintiff Student relief from a robotic application of unexcused absence treatment - - which they did - - is deliberate indifference, pure and simple, in the sense of actionable wrong. Moreover, the acts, omissions, and decisions of Defendants Dixon District, Marquez and Dolan, were not being written upon the proverbial blank slate. The academic credit recovery burden which Plaintiff Student would have to carry, already colossal, was only becoming heavier. The pit of unexcused absences from which he would have to emerge was becoming deeper. The doors of bathrooms near classrooms remained locked. He had been barred from participating in his favorite nonacademic, credit-worthy activities: track team, and Future Farmers of America. Even *with* a proper Section 504 Plan implemented faithfully, leavened by the fun of track team and FFA, it would have taken willpower and maturity extraordinary for a 17-year-old to maintain dedication to school; but *without* these aids and connecting supports, and bereft of the

1  "glue" of track team and FFA,  feeling himself to be a member of the Dixon High School

2  community was becoming not a fact but a fiction.

3       99.  Eventually, the problems associated with the unresolved impasse over excused

4  absence ripened into a School Attendance Review Board ("SARB") proceeding which, in or about

5  January 2020, brought about Dixon District's imposition upon Plaintiff Student of involuntary

6  disenrollment from school.  The failure or refusal to provide faithful implementation of Section

7  504 Plan accommodations, the failure to excuse health-related absences, the poorly-designed

8  offering of a program of academic credit recovery, the actions to wall Plaintiff Student off from

9  the nonacademic aspects he loved (track team and FFA), the growing impossibility of ever

10  clearing up the deficits on his transcript, all these combined were factors as Plaintiff Student's

11  progress in the curriculum imploded and came to a halt.

12       100.  The effect upon Plaintiff Student of Defendant Dixon District's repeated rejection of

13  the documentation provided by Plaintiffs to validate Plaintiff Student's absences as warranting

14  handling as excused absences, was to further discourage, demoralize, and depress him, and to

15  cause him to experience additional severe emotional pain, trauma, humiliation and despair.  As a

16  foreseeable and proximate result of this, Plaintiff Student experienced still greater fear, anxiety,

17  pain, and apprehension in relation to the prospect of returning to Dixon High School.  This

18  extended, prolonged, and aggravated the pattern of his absences from school, as a direct,

19  foreseeable and proximate result of the acts and omissions of Defendants Dixon District, Marquez,

20  Dolan, Solano COE and Solano SELPA.   This constitutes a further violation on the part of said

21  Defendants in their obligations to Plaintiff Student under Section 504 and the ADA.

22       101.  Not later than on or about November 7, 2019, Defendants Dixon District, Marquez,

23  Dolan, Solano SELPA and Solano COE gained both constructive knowledge and actual

24  knowledge that in addition to the two disabilities which already had formed the basis for a Section

25  504 Plan of accommodations, Plaintiff Student also suffered from a diagnosed depressive disorder,

26  as documented in a letter dated October 29, 2019, from Plaintiff Student's treating doctor,

27  Cheyenne Xiao He, M.D., of the Department of Psychiatry of the Permanente Medical Group, Inc.

28  Plaintiffs provided a copy of that letter to said Defendants by email on November 7, 2019.

102.  At all times relevant hereto, Plaintiff Student continued to suffer from, and receive medical treatment for, a clinically diagnosed anxiety disorder.  All of the Named Defendants had knowledge of this at all times relevant hereto.   It is undisputed that this formed one of the chief factual bases for Plaintiff Student's need and eligibility for a Section 504 Plan of accommodations.  As previously noted herein, one of the accommodations included in a Section 504 Plan for him at Vacaville High School had been a hall pass.  The hall pass was to enable him to reach one of two specific destinations:  either to reach a bathroom in the school building on an exigent basis as needed, or to reach the office of the School Nurse where he should be permitted to have some privacy to use coping mechanisms to relieve an onset of the anxiety disorder while in school.  This feature - - the hall pass - -  was preserved when Defendant Dixon District said it would carry over the Section 504 Plan from Vacaville upon Plaintiff Student's enrollment in Dixon.

103.  However, as events unfolded at Dixon High School, particularly after the start of the 2019-20 school year there, the deliberate indifference, or worse, on the part of one or more of the officials and/or employees of Dixon District served to thwart this feature of the Section 504 Plan.  Plaintiff Student reported - - and Plaintiff Parents apprised Defendant Dixon District of such reports - - that he frequently would find a bathroom locked during the school day.  This problem was aggravated by scheduling decisions by Defendant Dixon District in an arbitrary and capricious manner, which caused Plaintiff Student to be scheduled to be in classroom or other school spaces located far from bathroom facilities.  This problem also was a feature of the after-school hours when Dixon District made available to Plaintiff Student the sessions of an academic-credit-recovery program in the Dixon High School campus:  bathroom facilities were locked during these after-school hours, thus once again rendering for naught, the supposed hall-pass accommodation nominally a part of Plaintiff Student's Section 504 plan of accommodations.

104.  Also, on many occasions, when Plaintiff Student sought to reach the office of the School Nurse for the purpose of accessing a quiet space for recourse to his coping techniques to alleviate an anxiety disorder onset, he often found the School Nurse was not present on-site and thus that he was not able to access her office for this need.

105. Plaintiff Parents made known these facts in a timely manner and in writing to Defendants Dolan, Dixon District, Solano SELPA and Solano COE. The pattern of unreliable access to restrooms and frequent lack of access to the School Nurse's office thwarted implementation of these features of the Section 504 Plan. This pattern constitutes a further unlawful breach of Section 504 and ADA obligations on the part of Defendants Dixon District, Solano SELPA and Solano COE.

106. Plaintiff Student has engaged in advocacy for his rights and interests with respect to his federal and state educational rights by various means, including but not limited to, by making known his concerns to his parents (Plaintiffs Sarah Anenson and Christian Anenson), authorizing them to seek redress for his concerns on his behalf; by making known to school authorities at Vacaville High School and at Dixon High School his concerns over failure to honor and implement a Section 504 Plan for accommodating his disabilities; and by other means.

## IV. LEGAL CLAIMS

### Count One: Abridgement of Rights Protected by Section 504 of Rehabilitation Act: [As to All Defendants]

107. Plaintiffs repeat and reallege each and every allegation contained in paragraph 1 through paragraph 106 herein, with the same force and effect as if fully set forth herein.

108. At all times relevant hereto, Section 504 and regulations thereunder have required the Defendants herein to provide Plaintiff Student with reasonable accommodations to ensure he would not, on the basis of disability, suffer deprivation of the benefits of public school education. The statute provides:

> "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

29 U.S.C.A. § 794 (West).  It is undisputed that Plaintiff Student is an "otherwise qualified individual with a disability" within the meaning and coverage of Section 504.

109. It has long been established that Section 504 contains an implied right of action for damages to enforce its safeguards.  *Mark H. v. Lemahieu*, 513 F.3d 922, 935-939 (9th Cir. 2008); *Greater L.A. Counsel on Deafness v. Zolin, Inc.,* 812 F.2d 1103, 1107 (9th Cir. 1987).

110.   To recover monetary damages under the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant. *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir.1998).  For purposes of a Section 504 claim for monetary damages, intentional discrimination by a defendant is established by proof of the defendant's deliberate indifference. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–41 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

111.   The facts recited in this Amended Complaint constitute the elements of a cause of action for violation of Section 504 by each of the Named Defendants.

112.   The facts recited in this Amended Complaint describing the refusal of the Named Defendants to comply with their obligations to Plaintiff Student despite repeated instances of  the provision by Plaintiffs of written notice of Names Defendants' violations , including but not limited to (a) the failure of Named Defendants to duly implement agreed accommodations in accordance with an established 504 Plan for Plaintiff Student, (b) at Vacaville High School the failure to accord excused absence treatment to absences on the part of Plaintiff Student documented with written communications from his healthcare providers, (c) at Vacaville High School the failure by Vacaville District to ensure that Plaintiff Student would receive due academic credit for completed assignments delivered by him or by his parents to the school, and (d) at Dixon High School repeatedly subjecting him to the unwelcome, emotionally disruptive and harmful communications from Defendant Marquez despite knowledge of Plaintiff Student's anxiety disorder, each constitute prima facie evidence of deliberate indifference on the part of each of the Named Defendants, respectively and severally, sufficient to establish the Plaintiffs' right to recover monetary damages according to proof.

1    113.  Exhaustion of state judicial or state administrative remedies is not a prerequisite to

2    bringing an action under Rehabilitation Act Section 504.

3    114.  As a result of Defendant Districts' continuing material breach of their several

4    obligations to Plaintiffs, Plaintiffs are entitled to a judicial order requiring remedial awarding of

5    academic credit to Plaintiff Student and other equitable relief, together with an award of monetary

6    damages to each of the Plaintiffs, statutory attorneys' fees, costs of suit, and such other relief as

7    the court may find appropriate.

8         WHEREFORE, Plaintiffs demand judgment against Defendants for:

9    i.        During pendency of this action, a preliminary injunction against Defendants, and

10             each of them, enjoining them from any further acts or omissions blocking,

11             impeding, obstructing, or impairing Plaintiff Student's advancement in educational

12             and career opportunities, and including an affirmative order, requiring them to take

13             all such steps and measures feasible on an interim basis to recognize and accredit

14             Plaintiff Student for all academic attainments, passing grades, and satisfactory

15             assessments of which Defendants' prior acts and omissions have deprived him;

16   ii.       On a final hearing, a permanent injunction against Defendants, and each of them,

17             enjoining them to take and complete all such necessary and appropriate steps to

18             fully remedy the impairment of educational attainments which their violations of

19             law caused Plaintiff Student to suffer, including, but not limited to, all such steps

20             and measures necessary to award academic credits to Plaintiff Student for passing

21             the courses in which he enrolled at Vacaville High School in 2018-19 and at Dixon

22             High School in 2019-20 ;

23   iii.      An order that Defendants each, according to their respective several liability,  pay a

24             sum of money according to proof, as damages;

25   iv.       An order that Defendants each pay to Plaintiffs statutory interest at the rate of ten

26             per cent (10%)  per annum on said several liability for monetary damages until

27             paid, but in any event in an amount adequate to render complete the compensation

28             being provided to Plaintiffs by this action;

v.   An order designating Plaintiffs as prevailing parties under 29 U.S.C.A. § 794a(b) and awarding to Plaintiffs their attorneys' fees pursuant to the provisions of 29 U.S.C.A. § 794a(b), to be paid to Plaintiffs by Defendants, in an amount determined by the court to be reasonable as authorized by Section 504, and according to proof;

vi.   Costs of suit; and

vii.   Any other and further relief the court considers proper.

## Count Two: Abridgement of Rights Protected by ADA Title II
## [As to All Defendants]

115.  Plaintiffs hereby repeat and reallege each and every allegation contained in paragraph 1 through paragraph 114 herein, with the same force and effect as if fully set forth herein.

116.  ADA Title II, Section 201 (Definitions), provides in pertinent part:

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C.A. § 12131 (West).

117.  ADA Title II, Section 202 provides:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C.A. § 12132 (West).

118.  At all times relevant hereto, the ADA and regulations thereunder have required the Defendants herein to provide Plaintiff Student with reasonable accommodations to ensure he would not, on the basis of disability, suffer deprivation of the benefits of public school education.

119.  The remedies, procedures and rights arising pursuant to Section 504 are statutorily incorporated into the ADA.  Thus, the long-established implied right of action for damages to enforce the safeguards of Section 504, is also applicable for violations of the ADA.

120.  To recover monetary damages under the ADA, a plaintiff must prove intentional discrimination on the part of the defendant. *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir.1998).  For purposes of an ADA claim for monetary damages, intentional discrimination by a defendant is established by proof of the defendant's deliberate indifference.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–41 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

121.  The facts recited in this Amended Complaint constitute the elements of a cause of action for violation of the ADA by each of the Named Defendants.

122.  The facts recited in this Amended Complaint constitute prima facie evidence of deliberate indifference on the part of each of the Named Defendants sufficient to establish the Plaintiffs' right to recover monetary damages according to proof.

123.  Exhaustion of state judicial or state administrative remedies is not a prerequisite to bringing an action under ADA Title II.

124.  As a result of Defendant Districts' continuing material breach of their several obligations to Plaintiffs, , Plaintiffs are entitled to a judicial order requiring remedial awarding of academic credit to Plaintiff Student and other equitable relief, together with an award of monetary damages to each of the Plaintiffs, statutory attorneys' fees, costs of suit, and such other relief as the court may find appropriate.

WHEREFORE, Plaintiffs demand judgment against Defendants for:

i.        During pendency of this action, a preliminary injunction against Defendants, and each of them, enjoining them from any further acts or omissions blocking, impeding, obstructing, or impairing Plaintiff Student's advancement in educational and career opportunities, and including an affirmative order, requiring them to take

1    all such steps and measures feasible on an interim basis to recognize and accredit
2    Plaintiff Student for all academic attainments, passing grades, and satisfactory
3    assessments of which Defendants' prior acts and omissions have deprived him;

4    ii.   On a final hearing, a permanent injunction against Defendants, and each of them,
5          enjoining them to take and complete all such necessary and appropriate steps to
6          fully remedy the impairment of educational attainments which their violations of
7          law caused Plaintiff Student to suffer, including, but not limited to, all such steps
8          and measures necessary to award academic credits to Plaintiff Student for passing
9          the courses in which he enrolled at Vacaville High School in 2018-19 and at Dixon
10         High School in 2019-20 ;

11   iii.  An order that Defendants each, according to their respective several liability,  pay a
12         sum of money according to proof, as damages;

13   iv.   An order that Defendants each pay to Plaintiffs statutory interest at the rate of ten
14         per cent (10%) per annum on said several liability for monetary damages until paid,
15         but in any event in an amount adequate to render complete the compensation being
16         provided to Plaintiffs by this action;

17   v.    An order designating Plaintiffs as prevailing parties under 29 U.S.C.A. § 794a(b)
18         and awarding to Plaintiffs their attorneys' fees pursuant to the provisions of 29
19         U.S.C.A. § 794a(b), to be paid to Plaintiffs by Defendants,  in an amount
20         determined by the court to be reasonable as authorized by Section 504, and
21         according to proof;

22   vi.   Costs of suit; and

23   vii.  Any other and further relief the court considers proper.

24

25            **Count Three:  Unlawful Retaliation Prohibited Under ADA**
             **[As to Defendants Marquez, Dolan, and Dixon District]**
26

27        125.  Plaintiffs hereby repeat and reallege each and every allegation contained in paragraph
28   1 through paragraph 124 herein, with the same force and effect as if fully set forth herein.

126. At all times relevant hereto, Plaintiff Student was a "qualified individual with a disability", within the coverage and protection of Title II of the ADA, § 201 et seq., 42 U.S.C. §§ 12131 et seq.

127. Section 503 of the ADA, 42 U.S.C. § 12203, provides in pertinent part:

**(a) Retaliation**

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a) (West).

128. In advocating for his rights and interests with respect to his federal and state educational rights, including but not limited to during the period August 2017 through January 2020 in communications with Defendants concerning Section 504 Plan accommodations in connection with his public school education, Plaintiff Student was engaging in a protected activity, within the coverage and protection of applicable anti-retaliation and anti-interference provisions of the Americans With Disabilities Act of 1990, including, but not limited to, 42 U.S.C. §§ 12203(a) and 12203(b), and regulations thereunder.

129. In advocating for their son (Plaintiff Student) with respect to his federal and state educational rights, including but not limited to during the period August 2017 through January 2020 in communications with Defendants concerning Section 504 Plan accommodations in connection with his public school education, Plaintiff Parents were engaging in a protected activity, within the coverage and protection of applicable anti-retaliation and anti-interference provisions of the ADA, including but not limited to, 42 U.S.C. §§ 12203(a) and 12203(b), and regulations thereunder.

130. Defendants Marquez, Dolan, and Dixon District, and Defendants DOES 1-25, inclusive, in their respective official and individual capacities, and each of them, were at all times relevant hereto aware of this protected activity on the part of Plaintiff Student and Plaintiff Parents. Said Defendants, and each of them, acquired knowledge of this protected activity by several means, including, but not limited to, from the communications received from Plaintiff

1   Student and/or from Plaintiff Parents, or from any one or more of them, in writing, by phone,

2   and/or in person, in connection with Section 504 Plan issues relating to Plaintiff Student.

3       131.   The refusal by Defendants Marquez, Dolan, and Dixon District to honor the requests

4   from Plaintiff Parents that Defendant Marquez should cease and desist from further in-person

5   communications in meetings one-on-one with Plaintiff Student, constitutes an adverse action in

6   unlawful retaliation against each of the three Plaintiffs herein, for having engaged in a protected

7   activity, and is in violation of applicable anti-retaliation and anti-interference provisions of the

8   ADA, including but not limited to, 42 U.S.C. §§ 12203(a) and 12203(b), and of regulations

9   thereunder.  Such adverse action was further manifested by the persistence of Defendant Marquez,

10  with the approval of Defendant Dolan and Dixon District, to summon Plaintiff Student to one-on-

11  one closed-door meetings with her, and to command Plaintiff Student to appear for such one-on-

12  one, closed-door meetings with her, over the repeated written and spoken objections of Plaintiffs

13  to such encounters.

14      132.  Such adverse action was further manifested by the refusal of Dixon District to accord

15  proper excused-absence status to Plaintiff Student's absences during the Fall 2019 semester despite

16  Dixon District's receipt of letters written by Plaintiff Student's healthcare providers attesting to the

17  valid, healthcare-related basis for treating his absences from school as excused absences.

18  Defendants Marquez, Dolan, and Dixon District each caused and contributed to Plaintiff Student's

19  continuing condition of debilitating anxiety through the Fall 2019 semester to such an extent that it

20  brought about his the eventual involuntary disenrollment of Plaintiff Student from Dixon District,

21  total denial of his access to the benefit of public education, cancellation of his Section 504 Plan of

22  accommodations, and other grievous loss, causing him additional, severe and substantial harm,

23  damage, injury, cost, expense, loss and detriment

24      133.  The foregoing acts and omissions recited in this Amended Complaint, including but

25  not limited to in paragraphs 76 through 106, constitute adverse actions for purposes of evaluating

26  a cause of action for unlawful retaliation, in that they are acts and omissions of a kind that might

27  well have dissuaded or deterred a reasonable person of Plaintiff Student's age and with his

28  disabilities from making or continuing to support a claim to school authorities regarding

insufficient implementation of a Section 504 Plan of accommodations.  Plaintiff Student at the time of most of the events in question was age 17 (seventeen) or younger.  He was suffering at all times relevant hereto, from a clinically diagnosed severe anxiety disorder.  He was also suffering from a clinically diagnosed depressive disorder.  The conduct of Defendant Marquez,  endorsed by Defendants Dolan and Dixon District, as a proximate, direct and foreseeable result caused Plaintiff Student to suffer acute anxiety, panic attacks, severe emotional pain, severe emotional hurt, trauma, physical distress, and apprehension about being on the Dixon High School campus.  This was an injury of a kind - - due to the toll it exacted from him and upon his parents each time said Defendants' conduct, acts, and omissions were repeated - -  that might well have dissuaded or deterred a reasonable person of Plaintiff Student's age and with his disabilities, from making or continuing to support a claim to school authorities regarding said Defendants' violations of his educational rights.

134.  With regard to Plaintiffs Sarah Anenson and Christian Anenson, the foregoing acts and omissions recited in this Amended Complaint, including but not limited to in paragraphs 76 through 106, constitute adverse actions for purposes of evaluating a cause of action for unlawful retaliation, in that they are acts and omissions of a kind that might well have dissuaded or deterred a reasonable person of said Plaintiff Parents' age and  parental status, and having a son with Plaintiff Student's disabilities, from making or continuing to support a claim to school authorities regarding insufficient implementation of a Section 504 Plan of accommodations, in light of the grievous emotional pain, trauma, harm, and suffering which Plaintiff Parents accurately perceived said retaliatory and adverse acts and omissions by said Defendants were causing Plaintiff Student to experience.

135. A causal connection exists between the protected activity undertaken by Plaintiffs and the adverse action taken by Defendant Dixon District and Defendants DOES 1-25, inclusive, in their respective official and individual capacities, and each of them.  The causal connection can be duly inferred from the timing alone, where, as here, the adverse action by said Defendants, evidenced by their written communications and their conduct, followed closely on the heels of the protected activity undertaken by Plaintiff Parents, including but not limited to Plaintiff Parents'

numerous written communications with officials and employees of Defendant Dixon District, including but not limited to, written communications from Plaintiff Parents to Defendant Dolan and to the top official of Defendant Solano COE.

136. The facts and circumstances recited in the foregoing paragraphs, when established at trial or on dispositive motion, will constitute evidence of a conspiracy by the Defendants Marquez, Dolan, Dixon District, and one or more of DOE Defendants 1-25, inclusive, to interfere with civil rights of Plaintiffs, as proscribed under the provisions of 42 U.S.C. § 1985.

137. The facts and circumstances recited in the foregoing paragraphs, when shown at trial or on dispositive motion, will establish a prima facie case of prohibited retaliation, coercion, intimidation, threat or interference by said Defendants against Plaintiff Parents, for purposes of the applicable anti-retaliation and anti-coercion provisions of the ADA, including but not limited to, 42 U.S.C. §§ 12203(a) and 12203(b), and regulations thereunder.

138. The facts and circumstances recited in the foregoing paragraphs, when shown at trial or on dispositive motion, will establish a prima facie case of prohibited retaliation by said Defendants against Plaintiff Student, for purposes of the applicable anti-retaliation and anti-coercion provisions of the ADA, including but not limited to, 42 U.S.C. §§ 12203(a) and 12203(b), and regulations thereunder.

139. Upon information and belief, Plaintiffs allege that said Defendants do not possess the evidence which would be needed to demonstrate a legitimate, non-retaliatory purpose for Defendant District's refusal to honor Plaintiff Parents' requests that Ms. Stephanie Marquez refrain from direct in-person meetings with Plaintiff Student one-on-one during the time period in question, that is between August 2019 and January 2020.

140. The purported justification cited by said Defendants, and each of them, for said Defendants' adverse action, that is, for Defendant District's refusal to honor Plaintiff Parents' requests that Ms. Stephanie Marquez refrain from direct in-person meetings with Plaintiff Student one-on-one during the time period in question, that is between August 2019 and January 2020, is pretextual.

141.  The purported justification cited by said Defendants, and each of them, for said District's adverse action against Plaintiffs, is unworthy of credence.

142.  Retaliation was the more likely and true motivation for the adverse action taken by the District Defendants in the refusal to honor Plaintiff Parents' requests that Ms. Stephanie Marquez refrain from direct in-person meetings with Plaintiff Student one-on-one during the time period in question, that is between August 2019 and January 2020.

143.  Exhaustion of state judicial or state administrative remedies is not a prerequisite to bringing an action under 42 U.S.C. § 1983.

144.  Exhaustion of state judicial or state administrative remedies is not a prerequisite to bringing an action under 42 U.S.C. § 1985.

145.  Exhaustion of the IDEA's administrative procedures is unnecessary where, as here, the gravamen of Plaintiffs' suit is something other than the denial of the IDEA's core guarantee of a FAPE.

146.  As a result of said Defendants' unlawful retaliation against Plaintiffs, Plaintiff Parents have each suffered special damages, which Plaintiffs intend to prove at trial.

147.  As a result of said Defendants' unlawful retaliation against Plaintiffs, Plaintiff Parents have each suffered general damages, which Plaintiffs intend to prove at trial.

148.  As a result of said Defendants' unlawful retaliation against Plaintiffs, Plaintiff Student has suffered special damages, which Plaintiffs intend to prove at trial.

149.  As a result of said Defendants' unlawful retaliation against Plaintiffs, Plaintiff Student has suffered general damages, which Plaintiffs intend to prove at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants Marquez, Dolan, and Dixon District, for:

i.  An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Student an amount as compensatory special damages, sufficient to compensate Plaintiff Parents for the harm inflicted by the unlawful retaliation;

ii. An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Student an amount, as compensatory general damages, sufficient to compensate Plaintiff Parents for the harm inflicted by the unlawful retaliation;

iii. An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Parents an amount as compensatory special damages, sufficient to compensate Plaintiff Student for the harm inflicted by the unlawful retaliation;

iv. An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Parents an amount, as compensatory general damages, sufficient to compensate Plaintiff Student for the harm inflicted by the unlawful retaliation;

v. An order that Defendants DOES 1-9 inclusive, individually, in aggregate in accordance with their several liability, pay to Plaintiff Parents an appropriate sum of money in exemplary or punitive damages, as authorized under the provisions of 42 U.S.C. § 1983 and 42 U.S.C. 1985;

vi. An order that Defendants DOES 1-9 inclusive, individually, in aggregate in accordance with their several liability, pay to Plaintiff Student an appropriate sum of money in exemplary or punitive damages, as authorized under the provisions of 42 U.S.C. § 1983 and 42 U.S.C. 1985;

vii. An order designating Plaintiffs, and each of them, as prevailing parties under 42 U.S.C. § 1988 and awarding to Plaintiffs, and each of them, a reasonable attorneys' fee and expert fees, as authorized under the provisions of 42 U.S.C. § 1988(b) and 42 U.S.C. § 1988(c), and payable by the said Defendants;

viii. Costs of suit; and

ix. Any other and further relief the court considers proper.

### Count Four:  Unlawful Interference, Coercion, Threat or Intimidation Prohibited Under ADA
### [As to Defendants Marquez, Dolan, and Dixon District]

150.  Plaintiffs hereby repeat and reallege each and every allegation contained in paragraph 1 through paragraph 149 herein, with the same force and effect as if fully set forth herein.

151. At all times relevant hereto, Plaintiff Student was a "qualified individual with a disability", within the coverage and protection of Title II of the ADA, § 201 et seq., 42 U.S.C. §§ 12131 et seq.

152. Section 503 of the ADA, 42 U.S.C. § 12203, provides in pertinent part:

**(b) Interference, coercion, or intimidation**

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b) (West).

153. As recited in this Amended Complaint, including but not limited to in paragraphs 76 through 106 hereof, Defendants Marquez, Dolan, and Dixon District have by various means and measures sought to interfere with, coerce, threaten and intimidate Plaintiff Student, a person with a disability, so as to deter or dissuade him from the exercise or enjoyment of his rights as guaranteed to him under the ADA and Section 504.

154. As recited in this Amended Complaint, including but not limited to in paragraphs 76 through 106 hereof, the interference, coercion, threat and intimidation wrought by Defendants Marquez, Dolan, and Dixon District has a nexus to the exercise or enjoyment by Plaintiff Student of his rights guaranteed to him under the ADA and Section 504.

155. As recited in this Amended Complaint, including but not limited to in paragraphs 76 through 106 hereof, Plaintiff Student suffered various distinct and palpable injuries which resulted from his refusal to give up his rights, and from said interference, coercion, threat and intimidation itself.

WHEREFORE, Plaintiffs demand judgment against Defendants Marquez, Dolan, and Dixon District, for:

i.  An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Student an amount as compensatory special damages, sufficient to compensate Plaintiff Parents for the harm inflicted by the unlawful retaliation;

ii. An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Student an amount, as compensatory general damages, sufficient to compensate Plaintiff Parents for the harm inflicted by the unlawful retaliation;

iii.  An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Parents an amount as compensatory special damages, sufficient to compensate Plaintiff Student for the harm inflicted by the unlawful retaliation;

iv.  An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Parents  an amount, as compensatory general damages, sufficient to compensate Plaintiff Student for the harm inflicted by the unlawful retaliation;

v.  An order that Defendants DOES 1-9 inclusive, individually, in aggregate in accordance with their several liability, pay to Plaintiff Parents an appropriate sum of money in exemplary or punitive damages, as authorized under the provisions of 42 U.S.C. § 1983 and 42 U.S.C. 1985;

vi.  An order that Defendants DOES 1-9 inclusive, individually, in aggregate in accordance with their several liability, pay to Plaintiff Student an appropriate sum of money in exemplary or punitive damages, as authorized under the provisions of 42 U.S.C. § 1983 and 42 U.S.C. 1985;

vii. An order designating Plaintiffs, and each of them, as prevailing parties under 42 U.S.C. § 1988 and awarding to Plaintiffs, and each of them, a reasonable attorneys' fee and expert fees, as authorized under the provisions of 42 U.S.C. § 1988(b) and 42 U.S.C. § 1988(c), and payable by the said Defendants;

viii. Costs of suit; and

ix. Any other and further relief the court considers proper.

## Count Five:  Unlawful Retaliation Prohibited Under Rehabilitation Act, Section 504
### [As to Defendants Marquez, Dolan, and Dixon District]

156.  Plaintiffs hereby repeat and reallege each and every allegation contained in paragraph 1 through paragraph 155 herein, with the same force and effect as if fully set forth herein.

157.  At all times relevant hereto, Plaintiff Student has been a qualified individual with a disability, within the coverage and protection of the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794, and regulations thereunder.

158.  In advocating for his rights and interests with respect to his federal and state educational rights, including but not limited to during the period August 2017 through January 2020 in communications with Defendants concerning Section 504 Plan accommodations in connection with his public school education, Plaintiff Student was engaging in a protected activity, within the coverage and protection of applicable provisions of  the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794, and of regulations thereunder.

159.  In advocating for  their son (Plaintiff Student) with respect to his federal and state educational rights, including but not limited to during the period August 2017 through January 2020 in communications with Defendants concerning Section 504 Plan accommodations in connection with his public school education, Plaintiff Parents were engaging in a protected activity, within the coverage and protection of applicable provisions of  the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794, and of regulations thereunder.

160.  Defendants Marquez, Dolan, and Dixon District, and Defendants DOES 1-25, inclusive, in their respective official and individual capacities, and each of them, were at all times relevant hereto aware of this protected activity on the part of Plaintiff Student and Plaintiff Parents.  Said Defendants, and each of them, acquired knowledge of this protected activity by several means, including, but not limited to, from the communications received from Plaintiff Student and/or from Plaintiff Parents, or from any one or more of them, in writing, by phone, and/or in person, in connection with Section 504 Plan issues relating to Plaintiff Student.

161.  The refusal by Defendants Marquez, Dolan, and Dixon District to honor the requests from Plaintiff Parents that Defendant Marquez should cease and desist from further in-person

communications in meetings one-on-one with Plaintiff Student, constitutes an adverse action in unlawful retaliation against each of the three Plaintiffs herein, for having engaged in a protected activity, and is in violation of applicable anti-retaliation safeguards under the Rehabilitation Act. Such adverse action was further manifested by the persistence of Defendant Marquez, with the approval of Defendant Dolan and Dixon District, to summon Plaintiff Student to one-on-one closed-door meetings with her, and to command Plaintiff Student to appear for such one-on-one, closed-door meetings with her, over the Plaintiffs' repeated written and spoken objections to such encounters.

162. Such adverse action was further manifested by the refusal of Dixon District to accord proper excused-absence status to Plaintiff Student's absences during the Fall 2019 semester despite Dixon District's receipt of letters written by Plaintiff Student's healthcare providers attesting to the valid, healthcare-related basis for treating his absences from school as excused absences. Defendants Marquez, Dolan, and Dixon District each caused and contributed to Plaintiff Student's continuing condition of debilitating anxiety through the Fall 2019 semester to such an extent that it brought about his the eventual involuntary disenrollment of Plaintiff Student from Dixon District, total denial of his access to the benefit of public education, cancellation of his Section 504 Plan of accommodations, and other grievous loss, causing him additional, severe and substantial harm, damage, injury, cost, expense, loss and detriment

163. The foregoing acts and omissions as recited in this Amended Complaint, including but not limited to in paragraphs 76 through 106 hereof, constitute adverse actions for purposes of evaluating a cause of action for unlawful retaliation, in that they are acts and omissions of a kind that might well have dissuaded or deterred a reasonable person of Plaintiff Student's age and with his disabilities from making or continuing to support a claim to school authorities regarding insufficient implementation of a Section 504 Plan of accommodations. Plaintiff Student at the time of most of the events in question was age 17 (seventeen) or younger. He was suffering at all times relevant hereto, from a clinically diagnosed severe anxiety disorder. He was also suffering from a clinically diagnosed depressive disorder. The conduct of Defendant Marquez, endorsed by Defendants Dolan and Dixon District, as a proximate, direct and foreseeable result, caused

Plaintiff Student to suffer acute anxiety, panic attacks, severe emotional pain, severe emotional hurt, trauma, physical distress, and apprehension about being on the Dixon High School campus, absence from school, severely damaging his opportunity to progress in the academic curriculum. This was an injury of a kind - - due to the toll in severe emotional distress, pain, trauma, and despair it exacted from him and upon his parents each time said Defendants' conduct, acts, and omissions were repeated - -  that might well have dissuaded or deterred a reasonable person of Plaintiff Student's age and with his disabilities, from making or continuing to support a claim to school authorities regarding said Defendants' violations of his educational rights.

164.  With regard to Plaintiffs Sarah Anenson and Christian Anenson, the foregoing acts and omissions as recited in this Amended Complaint, including but not limited to in paragraphs 76 through 106 hereof, constitute adverse actions for purposes of evaluating a cause of action for unlawful retaliation, in that they are acts and omissions of a kind that might well have dissuaded or deterred a reasonable person of said Plaintiff Parents' age and  parental status, and having a son with Plaintiff Student's disabilities, from making or continuing to support a claim to school authorities regarding insufficient implementation of a Section 504 Plan of accommodations, in light of the grievous emotional pain, trauma, harm, and suffering which Plaintiff Parents accurately perceived said retaliatory and adverse acts and omissions by said Defendants were causing Plaintiff Student to experience and the related severe emotional pain, trauma, harm and suffering which it caused Plaintiff Parents themselves to suffer.

165.  A causal connection exists between the protected activity undertaken by Plaintiffs and the adverse action taken by Defendants Marquez, Dolan, and Dixon District, in their respective official and individual capacities, and each of them.  The causal connection can be duly inferred from the timing alone, where, as here, the adverse action by said Defendants, evidenced by their written communications and their conduct, followed closely on the heels of the protected activity undertaken by Plaintiff Parents, including but not limited to Plaintiff Parents' numerous written communications with officials and employees of Defendant Dixon District, including but not limited to, written communications from Plaintiff Parents to Defendant Dolan and to the top official of Defendant Solano COE.

166. The facts and circumstances recited in the foregoing paragraphs, when established at trial or on dispositive motion, will constitute evidence of a conspiracy by the Defendants Marquez, Dolan, and Dixon District, and one or more of DOE Defendants 1-25, inclusive, to interfere with civil rights of Plaintiffs, as proscribed under the provisions of 42 U.S.C. § 1985.

167. The facts and circumstances recited in the foregoing paragraphs, when shown at trial or on dispositive motion, will establish a prima facie case of prohibited retaliation by said Defendants against Plaintiff Parents, for purposes of the applicable provisions of the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794, and of regulations thereunder.

168. The facts and circumstances recited in the foregoing paragraphs, when shown at trial or on dispositive motion, will establish a prima facie case of prohibited retaliation by said Defendants against Plaintiff Student, for purposes of the applicable provisions of  the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794, and of regulations thereunder.

169. Upon information and belief, Plaintiffs allege that said Defendants do not possess the evidence which would be needed to demonstrate a legitimate, non-retaliatory purpose for the refusal by Defendants Marquez, Dolan, and Dixon District to honor Plaintiffs' requests that Defendant Marquez refrain from direct in-person meetings with Plaintiff Student one-on-one during the time period in question, that is between August 2019 and January 2020.

170. The purported justification cited by said Defendants, and each of them, for said Defendants' adverse action, that is, for Defendant District's refusal to honor Plaintiff Parents' requests that Ms. Stephanie Marquez refrain from direct in-person meetings with Plaintiff Student one-on-one during the time period in question, that is between August 2019 and January 2020, is pretextual.

171. The purported justification cited by said Defendants, and each of them, for said District's adverse action against Plaintiffs, is unworthy of credence.

172. Retaliation was the more likely and true motivation for the adverse action taken by the District Defendants in the refusal to honor Plaintiff Parents' requests that Ms. Stephanie Marquez refrain from direct in-person meetings with Plaintiff Student one-on-one during the time period in question, that is between August 2019 and January 2020.

173.  Exhaustion of state judicial or state administrative remedies is not a prerequisite to bringing an action under 42 U.S.C. § 1983.

174.  Exhaustion of state judicial or state administrative remedies is not a prerequisite to bringing an action under 42 U.S.C. § 1985.

175.  As a result of said Defendants' unlawful retaliation against Plaintiffs, Plaintiff Parents have each suffered special damages, which Plaintiffs intend to prove at trial.

176.  As a result of said Defendants' unlawful retaliation against Plaintiffs, Plaintiff Parents have each suffered general damages, which Plaintiffs intend to prove at trial.

177.  As a result of said Defendants' unlawful retaliation against Plaintiffs, Plaintiff Student has suffered special damages, which Plaintiffs intend to prove at trial.

178.  As a result of said Defendants' unlawful retaliation against Plaintiffs, Plaintiff Student has suffered general damages, which Plaintiffs intend to prove at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants Marquez, Dolan, and Dixon District, for:

i.  An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Student an amount as compensatory special damages, sufficient to compensate Plaintiff Parents for the harm inflicted by the unlawful retaliation;

ii. An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Student an amount, as compensatory general damages, sufficient to compensate Plaintiff Parents for the harm inflicted by the unlawful retaliation;

iii.  An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Parents an amount as compensatory special damages, sufficient to compensate Plaintiff Student for the harm inflicted by the unlawful retaliation;

iv.  An order that the said Defendants, and each of them in aggregate in accordance with their several liability, pay to Plaintiff Parents  an amount, as compensatory general damages, sufficient to compensate Plaintiff Student for the harm inflicted by the unlawful retaliation;

v. An order that Defendants DOES 1-9 inclusive, individually, in aggregate in accordance with their several liability, pay to Plaintiff Parents an appropriate sum of money in exemplary or punitive damages, as authorized under the provisions of 42 U.S.C. § 1983 and 42 U.S.C. 1985;

vi. An order that Defendants DOES 1-9 inclusive, individually, in aggregate in accordance with their several liability, pay to Plaintiff Student an appropriate sum of money in exemplary or punitive damages, as authorized under the provisions of 42 U.S.C. § 1983 and 42 U.S.C. 1985;

vii. An order designating Plaintiffs, and each of them, as prevailing parties under 42 U.S.C. § 1988 and awarding to Plaintiffs, and each of them, a reasonable attorneys' fee and expert fees, as authorized under the provisions of 42 U.S.C. § 1988(b) and 42 U.S.C. § 1988(c), and payable by the said Defendants;

viii. Costs of suit; and

ix. Any other and further relief the court considers proper.

### Count Six:  Declaratory Relief, Temporary and Permanent Injunction, and Monetary Damages (Unruh Civil Rights Act, California Civil Code § 51) [As to All Defendants]

179.  Plaintiffs hereby repeat and reallege each and every allegation contained in paragraph 1 through paragraph 178 herein, with the same force and effect as if fully set forth herein.

180.  At all times relevant hereto, Plaintiff Student was a "qualified individual with a disability", within the coverage and protection of Title II of the Americans With Disabilities Act of 1990, § 201 et seq., 42 U.S.C. §§ 12131 et seq. (sometimes called herein the "ADA").

181.  At all times relevant hereto, Plaintiff Student was an individual with a "disability", within the coverage and protection of the Unruh Civil Rights Act, California Civil Code § 51.

182.  Each of the Named Defendants is a business establishment for purposes of the coverage and requirements of the Unruh Civil Rights Act, California Civil Code § 51.

183.  Each of the Named Defendants acted intentionally to discriminate in public accommodations in violation of the Unruh Civil Rights Act, California Civil Code § 51.

184.  Each of the Named Defendants is responsible for acts and/or omissions constituting a violation of Title II of the ADA with respect to the ADA-protected rights of Plaintiff Student.

185.  Pursuant to the provisions of California Civil Code § 51, a violation of the ADA constitutes a violation of the Unruh Civil Rights Act, California Civil Code § 51.

186.  As a proximate result of the unlawful discriminatory actions of each of the Defendants, Plaintiff Student suffered great shame, humiliation, inconvenience, and mental suffering, all to Plaintiff Student's general damages.

187.  As a proximate result of the unlawful discriminatory actions of each of the Defendants, Plaintiff Student suffered special damages by reason of the denial of advancement towards his high school diploma, eventually to include involuntary disenrollment from high school and deprivation of the benefits of a high school diploma, with attendant economic consequences including deprivation of earning capacity, loss of earnings, and other special damages.

188.  The Defendants' violation of the Unruh Civil Rights Act, California Civil Code § 51, entitles Plaintiff Student to recover statutory damages of a maximum of three times the amount of actual damages or a minimum of $4,000.

189.  Unless Defendants are enjoined by a preliminary and permanent injunction, Plaintiff Student will suffer great and irreparable injury in that he will be disqualified from consideration for many of the educational and career advancement opportunities which would otherwise have been afforded to him, including but not limited to, admission to a University of California four-year college program, and/or consideration for admission to one of the military academies such as the United States Air Force Academy, to which he aspires.  Plaintiff has no adequate remedy at law as pecuniary damages alone would not afford adequate relief.

190.  An actual controversy exists between Plaintiffs and Defendants as to the application of the Unruh Civil Rights Act, and whether the Defendants' actions violate the Unruh Civil Rights Act.  Plaintiffs contend that the Unruh Civil Rights Act applies to the Defendants and prohibits Defendants' discriminatory actions.

WHEREFORE, Plaintiffs pray for judgment against the Defendants, and against each of the Defendants in accordance with their respective several liability, as follows:

i.      Actual damages;

ii.     Special damages;

iii.    Statutory damages pursuant to Civil Code § 52(a);

iv.     Attorney's fees, pursuant to Civil Code § 52(a);

v.      During pendency of this action, a preliminary injunction against Defendants, and each of them, enjoining them from any further acts or omissions blocking, impeding, obstructing, or impairing Plaintiff Student's advancement in educational and career opportunities;

vi.     On a final hearing, a permanent injunction against Defendants, and each of them, enjoining them to take and complete all such necessary and appropriate steps to fully remedy the impairment of educational attainments which their violations of law caused Plaintiff Student to suffer;

vii.    A declaratory judgment declaring that the Unruh Civil Rights Act, Civil Code § 51, applies to Defendants, and to each of them, and that Defendants' actions violated the Unruh Civil Rights Act;

viii.   Costs of suit incurred; and

ix.     Such other and further relief as the Court may deem just and proper.


### Count Seven:  Declaratory Relief, Temporary and Permanent Injunction, and Monetary Damages (Disabled Persons Act, California Civil Code § 54) [As to All Defendants]


191.  Plaintiffs hereby repeat and reallege each and every allegation contained in paragraph 1 through paragraph 190 herein, with the same force and effect as if fully set forth herein.

192.  At all times relevant hereto, Plaintiff Student was a "qualified individual with a disability", within the coverage and protection of Title II of the Americans With Disabilities Act of 1990, § 201 et seq., 42 U.S.C. §§ 12131 et seq. (sometimes called herein the "ADA").

193.  At all times relevant hereto, Plaintiff Student was an individual with a "disability", within the coverage and protection of the Disabled Persons Act, California Civil Code § 54(b).

194.  Each of the Named Defendants operates one or more public buildings or public facilities for purposes of the coverage and requirements of the Disabled Persons Act, California Civil Code § 54.

195.  Each of the Named Defendants acted intentionally to discriminate in public accommodations in violation of the Disabled Persons Act, California Civil Code § 54.

196.  Each of the Named Defendants is responsible for acts and/or omissions constituting a violation of Title II of the ADA with respect to the ADA-protected rights of Plaintiff Student.

197.  Pursuant to the provisions of California Civil Code § 54, a violation of the ADA constitutes a violation of the Disabled Persons Act, California Civil Code § 54.

198.  As a proximate result of the unlawful discriminatory actions of each of the Defendants, Plaintiff Student suffered great shame, humiliation, inconvenience, and mental suffering, all to Plaintiff Student's general damages.

199.  As a proximate result of the unlawful discriminatory actions of each of the Defendants, Plaintiff Student suffered special damages by reason of the denial of advancement towards his high school diploma, eventually to include involuntary disenrollment from high school and deprivation of the benefits of a high school diploma, with attendant economic consequences including deprivation of earning capacity, loss of earnings, and other special damages.

200.  The Defendants' violation of the Disabled Persons Act, California Civil Code § 54, entitles Plaintiff Student to recover statutory damages of a maximum of three times the amount of actual damages or a minimum of $4,000.

201.  Unless Defendants are enjoined by a preliminary and permanent injunction, Plaintiff Student will suffer great and irreparable injury in that he will be disqualified from consideration for many of the educational and career advancement opportunities which would otherwise have been afforded to him, including but not limited to, admission to a University of California four-year college program, and/or consideration for admission to one of the military academies such as the United States Air Force Academy, to which he aspires.  Plaintiff has no adequate remedy at law as pecuniary damages alone would not afford adequate relief.

202. An actual controversy exists between Plaintiffs and Defendants as to the application of the Disabled Persons Act, and whether the Defendants' actions violate the Disabled Persons Act. Plaintiffs contend that the Disabled Persons Act applies to the Defendants and prohibits Defendants' discriminatory actions.

WHEREFORE, Plaintiffs pray for judgment against the Defendants, and against each of the Defendants in accordance with their respective several liability, as follows:

i.    Actual damages;

ii.    Special damages;

iii.    Statutory damages pursuant to Civil Code §§ 54 and 55;

iv.    Attorney's fees, pursuant to Civil Code § 55;

v.    During pendency of this action, a preliminary injunction against Defendants, and each of them, enjoining them from any further acts or omissions blocking, impeding, obstructing, or impairing Plaintiff Student's advancement in educational and career opportunities;

vi.    On a final hearing, a permanent injunction against Defendants, and each of them, enjoining them to take and complete all such necessary and appropriate steps to fully remedy the impairment of educational attainments which their violations of law caused Plaintiff Student to suffer;

vii.    A declaratory judgment declaring that the Disabled Persons Act, Civil Code § 54, applies to Defendants, and to each of them, and that Defendants' actions violated the Disabled Persons Act;

viii.    Costs of suit incurred; and

ix.    Such other and further relief as the Court may deem just and proper.

### Count Eight: Intentional Infliction of Emotional Distress
### [As to the Defendants Marquez, Dolan, and Dixon District]

203. Plaintiffs hereby repeat and reallege each and every allegation contained in paragraph 1 through paragraph 202 herein, with the same force and effect as if fully set forth herein.

204.  The acts and omissions by Defendant Marquez in regard to Plaintiff Student were extreme and outrageous.  Such extreme and outrageous conduct by Defendant Marquez includes, but may not be limited to in continuing to order Plaintiff Student to meet with her one-on-one, behind a closed door in her office, to seek to impose curricular schedule changes on Plaintiff Student against his will, and after Plaintiff Student protested that he would only speak with Defendant Marquez when his mother (Plaintiff Sarah Anenson) could be present, in light of Defendant Marquez's actual knowledge and constructive knowledge that Plaintiff Student suffered from a severe anxiety disorder.  Defendant Marquez gained actual knowledge that by compelling Plaintiff Student to meet one-on-one with her in her office with the door closed, she was causing Plaintiff Student to suffer a panic attack, yet Defendant Marquez refused to terminate the interaction.  Moreover, Defendant Marquez repeated the practice, ordering Plaintiff Student to meet one-on-one with her in her office with the door closed, on a subsequent occasion, despite having knowledge that this had caused Plaintiff Student to suffer a panic attack before, and even though Defendant Marquez had reason to know this was as likely to have the same harmful effect on Plaintiff Student again.  This pattern of conduct by Defendant Marquez is extreme and outrageous, taken as a whole, particularly in light of her knowledge of Plaintiff Student's susceptibility to a panic attack in light of a diagnosed anxiety disorder, and her knowledge that her initial order compelling him to meet one-on-one with her with the door closed had caused him to suffer a severe anxiety attack.

205.  The acts and omissions by Defendant Dolan and Defendant Dixon District in refusing to instruct Defendant Marquez to refrain from ordering Plaintiff Student to meet one-on-one with her with the door closed, manifests extreme and outrageous conduct by Defendant Dolan and Defendant Dixon District, in light of their knowledge of Plaintiff Student's anxiety disorder and susceptibility to a devastating panic attack, Plaintiffs' objections to further such one-on-one closed door meetings, and the fact that Plaintiff Student had in fact suffered a devastating panic attack as a result of the first such meeting demanded by Defendant Marquez.

206.  The conduct, acts and omissions of and by Defendants Marquez, Dolan, and Dixon District caused Plaintiff Student to suffer severe emotional harm.

207.  The conduct, acts and omissions of and by Defendants Marquez, Dolan, and Dixon District were intentional and/or reckless, in light of their knowledge of Plaintiff Student's disabilities, including, but not limited to, Plaintiff Student's generalized anxiety disorder, depressive disorder, and attention-deficit hyperactivity disorder (ADHD), and their knowledge that an initial one-to-one meeting which Defendant Marquez ordered Plaintiff Student to attend in her office with the door closed had caused Plaintiff Student to suffer a severe panic attack.

208.  The emotional harm suffered by Plaintiff Student was actually and proximately caused by the conduct, acts and omissions of Defendants Marquez, Dolan and Dixon District.

209.  Defendant Dixon District is vicariously liable for the acts and omissions of Defendants Marquez and Dolan, to the extent said acts and omissions occurred in the course and scope of employment by Dixon District.

210.  Plaintiffs have complied with the claim presentation requirements of the California Government Claims Act, Government Code §§ 905_ et seq., including, but not limited to, by presentation of an individual claim on behalf of each of the three Plaintiffs herein, to Dixon District, on or about February 5, 2020.

211.  Following Plaintiffs' presentation on or about February 5, 2020 of such claims to Dixon District, Dixon District has never granted such claims, but instead has either taken express action to deny the claims, or has allowed them to be deemed denied by operation of law.

WHEREFORE, Plaintiffs pray for judgment against Defendants Marquez, Dolan, and Dixon District, and against each of said Defendants in accordance with their respective several liability, as follows:

i.      General damages, including compensation for all detriment proximately caused, in accordance with California Civil Code § 3333;

ii.     Special damages;

iii.    During pendency of this action, a preliminary injunction against Defendants, and each of them, enjoining them from any further acts or omissions blocking, impeding, obstructing, or impairing Plaintiff Student's advancement in educational and career opportunities;

iv.     On a final hearing, a permanent injunction against Defendants, and each of them, enjoining them to take and complete all such necessary and appropriate steps to fully remedy the impairment of educational attainments which their violations of law caused Plaintiff Student to suffer;

v.     Costs of suit incurred; and

vi.     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to the provisions of Federal Rules of Civil Procedure Rule 38, Plaintiffs hereby demand a jury trial as to the claims stated in Counts One through Eight, inclusive, of this Amended Complaint.

Dated: September 30, 2021    **ROGER GREENBAUM EQUITY LAW & MEDIATION**

By:    /s/ Roger A. Greenbaum
Roger A. Greenbaum
Attorneys for Plaintiffs
Ryan Anenson
Sarah Anenson
Christian Anenson